**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILSON M. HOOD,
Plaintiff-Appellant,

v.

RYOBI AMERICA CORPORATION; RYOBI
NORTH AMERICA, INCORPORATED,
Defendants-Appellees,

No. 98-2442

and

LOWE'S HOME CENTERS,
INCORPORATED; RYOBI ELECTRIC TOOL
MANUFACTURING, INCORPORATED;
RYOBI MOTOR PRODUCTS
CORPORATION,
Defendants.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-97-4107-AMD)

Argued: April 9, 1999

Decided: June 23, 1999

Before WILKINSON, Chief Judge, and WIDENER
and KING, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Widener and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Charles Francis Fuller, MCCHESNEY & DALE, P.C., Bowie, Maryland, for Appellant. Philip Carlton Jacobson, ANDERSON, COE & KING, L.L.P., Baltimore, Maryland, for Appellees.

_____

**OPINION**

WILKINSON, Chief Judge:

Wilson M. Hood lost part of his thumb and lacerated his leg when he removed the blade guards from his new Ryobi miter saw and then used the unguarded saw for home carpentry. Hood sued Ryobi, alleging that the company failed adequately to warn of the saw's dangers and that the saw was defective. Applying Maryland products liability law, the district court granted summary judgment to Ryobi on all claims.

The saw and owner's manual bore at least seven clear, simple warnings not to operate the tool with the blade guards removed. The warnings were not required to spell out all the consequences of improper use. Nor was the saw defective -- Hood altered and used the tool in violation of Ryobi's clear warnings. Thus we affirm the judgment.

I.

Hood purchased a Ryobi TS-254 miter saw in Westminster, Maryland on February 25, 1995, for the purpose of performing home repairs. The saw was fully assembled at the time of purchase. It had a ten-inch diameter blade mounted on a rotating spindle controlled by a finger trigger on a handle near the top of the blade. To operate the saw, the consumer would use that handle to lower the blade through the material being cut.

Two blade guards shielded nearly the entire saw blade. A large metal guard, fixed to the frame of the saw, surrounded the upper half of the blade. A transparent plastic lower guard covered the rest of the

2

blade and retracted into the upper guard as the saw came into contact with the work piece.

A number of warnings in the operator's manual and affixed to the saw itself stated that the user should operate the saw only with the blade guards in place. For example, the owner's manual declared that the user should "KEEP GUARDS IN PLACE" and warned: "ALWAYS USE THE SAW BLADE GUARD. Never operate the machine with the guard removed"; "NEVER operate this saw without all guards in place and in good operating condition"; and "WARNING: TO PREVENT POSSIBLE SERIOUS PERSONAL INJURY, NEVER PERFORM ANY CUTTING OPERATION WITH THE UPPER OR LOWER BLADE GUARD REMOVED." The saw itself carried several decals stating "DANGER: DO NOT REMOVE ANY GUARD. USE OF SAW WITHOUT THIS GUARD WILL RESULT IN SERIOUS INJURY"; "OPERATE ONLY WITH GUARDS IN PLACE"; and "WARNING . . . DO NOT operate saw without the upper and lower guards in place."

The day after his purchase, Hood began working with the saw in his driveway. While attempting to cut a piece of wood approximately four inches in height Hood found that the blade guards prevented the saw blade from passing completely through the piece. Disregarding the manufacturer's warnings, Hood decided to remove the blade guards from the saw. Hood first detached the saw blade from its spindle. He then unscrewed the four screws that held the blade guard assembly to the frame of the saw. Finally, he replaced the blade onto the bare spindle and completed his cut.

Rather than replacing the blade guards, Hood continued to work with the saw blade exposed. He worked in this fashion for about twenty minutes longer when, in the middle of another cut, the spinning saw blade flew off the saw and back toward Hood. The blade partially amputated his left thumb and lacerated his right leg.

Hood admits that he read the owner's manual and most of the warning labels on the saw before he began his work. He claims, however, that he believed the blade guards were intended solely to prevent a user's clothing or fingers from coming into contact with the saw blade. He contends that he was unaware that removing the blade

3

guards would permit the spinning blade to detach from the saw. But Ryobi, he claims, was aware of that possibility. In fact, another customer had sued Ryobi after suffering a similar accident in the mid-1980s.

On December 5, 1997, Hood sued several divisions of Ryobi in the United States District Court for the District of Maryland. Hood raised claims of failure to warn and defective design under several theories of liability. On cross-motions for summary judgment the district court entered judgment for the defendants on all claims, finding that in the face of adequate warnings Hood had altered the saw and caused his own injury. Hood v. Ryobi N. Am., Inc., 17 F. Supp. 2d 448 (D. Md. 1998). Hood appeals.

II.

A manufacturer may be liable for placing a product on the market that bears inadequate instructions and warnings or that is defective in design. Moran v. Faberge, Inc., 332 A.2d 11, 15 (Md. 1975); Simpson v. Standard Container Co., 527 A.2d 1337, 1339-40 (Md. Ct. Spec. App. 1987). Hood asserts that Ryobi failed adequately to warn of the dangers of using the saw without the blade guards in place. Hood also contends that the design of the saw was defective. We disagree on both counts.[1]

A.

Hood first complains that the warnings he received were insufficiently specific. Hood admits that Ryobi provided several clear and conspicuous warnings not to operate the saw without the blade guards. He contends, however, that the warnings affixed to the product and displayed in the operator's manual were inadequate to alert him to the dangers of doing so. In addition to Ryobi's directive "never" to operate a guardless saw, Hood would require the company to inform of the actual consequences of such conduct. Specifically,

_____

[1] Hood raises these claims under three theories of recovery: strict liability, negligence, and breach of warranty. The principles of Maryland law governing these three theories, at least as relevant to this case, are virtually identical.

4

Hood contends that an adequate warning would have explained that removing the guards would lead to blade detachment.

We disagree. Maryland does not require an encyclopedic warning. Instead, "a warning need only be one that is reasonable under the circumstances." Levin v. Walter Kidde & Co., 248 A.2d 151, 153 (Md. 1968). A clear and specific warning will normally be sufficient -- "the manufacturer need not warn of every mishap or source of injury that the mind can imagine flowing from the product." Liesener v. Weslo, Inc., 775 F. Supp. 857, 861 (D. Md. 1991); see Levin, 248 A.2d at 154 (declining to require warning of the danger that a cracked syphon bottle might explode and holding "never use cracked bottle" to be adequate as a matter of law). In deciding whether a warning is adequate, Maryland law asks whether the benefits of a more detailed warning outweigh the costs of requiring the change. Moran, 332 A.2d at 15.

Hood assumes that the cost of a more detailed warning label is minimal in this case, and he claims that such a warning would have prevented his injury. But the price of more detailed warnings is greater than their additional printing fees alone. Some commentators have observed that the proliferation of label detail threatens to undermine the effectiveness of warnings altogether. See James A. Henderson, Jr. & Aaron D. Twerski, Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn, 65 N.Y.U. L. Rev. 265, 296-97 (1990). As manufacturers append line after line onto product labels in the quest for the best possible warning, it is easy to lose sight of the label's communicative value as a whole. Well-meaning attempts to warn of every possible accident lead over time to voluminous yet impenetrable labels -- too prolix to read and too technical to understand.

By contrast, Ryobi's warnings are clear and unequivocal. Three labels on the saw itself and at least four warnings in the owner's manual direct the user not to operate the saw with the blade guards removed. Two declare that "serious injury" could result from doing so. This is not a case where the manufacturer has failed to include any warnings at all with its product. See Moran, 332 A.2d at 13-14. Ryobi provided warnings sufficient to apprise the ordinary consumer that it

5

is unsafe to operate a guardless saw -- warnings which, if followed, would have prevented the injury in this case.

It is apparent, moreover, that the vast majority of consumers do not detach this critical safety feature before using this type of saw. Indeed, although Ryobi claims to have sold thousands of these saws, Hood has identified only one fifteen-year-old incident similar to his. Hood has thus not shown that these clear, unmistakable, and prominent warnings are insufficient to accomplish their purpose. Nor can he prove that increased label clutter would bring any net societal benefit. We hold that the warnings Ryobi provided are adequate as a matter of law.

B.

Hood's defective design claim is likewise unpersuasive. Hood's injuries were the direct result of the alterations he made to the saw -- alterations that directly contravened clear, unambiguous warnings. And such alterations defeat a claim of design defect.**2**

This rule has been expressed alternatively as one of duty and one of causation. First, a manufacturer is only required to design a product that is safe for its reasonably foreseeable uses. If that duty is met, the product is simply not defective. Banks v. Iron Hustler Corp., 475 A.2d 1243, 1255 (Md. Ct. Spec. App. 1984). Second, if a consumer alters a product in a way that creates a defect, the consumer's conduct rather than the manufacturer's is the proximate cause of any ensuing accident. See id. at 1253-55; Singleton v. Manitowoc Co., 727 F. Supp. 217, 222 (D. Md. 1989), aff'd, 931 F.2d 887 (4th Cir. 1991)

---

**2** Although this rule is effected through different defenses to strict liability and negligence claims, those defenses are functionally equivalent in this case. Strict liability is "conditioned upon the product reaching the user `without substantial change in the condition in which it is sold.'" Banks v. Iron Hustler Corp., 475 A.2d 1243, 1255 (Md. Ct. Spec. App. 1984) (quoting Restatement (Second) of Torts § 402A). Similarly, a manufacturer is not liable in negligence if an "intervening alteration of the product was the superseding cause of [a consumer's] injuries." Id. at 1254 (internal quotation marks omitted). On each claim Hood's alterations defeat recovery.

6

(table). Under either rationale, a post-sale product alteration will defeat a design defect claim if that alteration leads directly to the plaintiff's injury.

Hood admits that he altered the table saw by removing the blade guards from the unit's frame, and he acknowledges that the alteration led directly to his injuries. Hood asserts, however, that Ryobi should have foreseen that consumers might operate its saws with the guards removed. Hood notes that the operation of equipment without safety guards is a frequently cited OSHA violation. And, as noted, Ryobi itself has faced litigation on one other occasion for the same type of accident that befell Hood. In short, Hood contends that Ryobi should have designed its saw to operate equally well with the guards in place or removed.

We disagree. Maryland imposes no duty to predict that a consumer will violate clear, easily understandable safety warnings such as those Ryobi included with this product. For example, a manufacturer need not foresee that a consumer might store a gasoline can in his basement in contravention of clear warning labels. Simpson, 527 A.2d at 1341 ("`Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.'" (quoting Restatement (Second) of Torts § 402A cmt. j)). Nor must a manufacturer foresee that a worker will shove his arm into a conveyor machine to repair it without first shutting the machine down, again in violation of "explicit written warnings." Kline v. ABCO Engineering Corp., 991 F. Supp. 747, 750-51 (D. Md. 1997). When a consumer injures himself by using a product -- or, as in this case, by altering it -- in violation of clear, unmistakable, and easy-to-follow warnings, it is the consumer's own conduct that causes the injury. Id.; see Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167-68 (4th Cir. 1988). The manufacturer is not liable under a design defect theory.

We recognize that the American Law Institute has recently underscored the concern that comment j of the Second Restatement, read literally, would permit a manufacturer of a dangerously defective product to immunize itself from liability merely by slapping warning labels on that product. See Restatement (Third) of Torts: Prod. Liab.

7

§ 2 cmt. l & Reporter's Note. We are all afflicted with lapses of attention; warnings aimed simply at avoiding consumer carelessness should not absolve a manufacturer of the duty to design reasonable safeguards for its products. See id. cmt. 1, illus. 14 (when warning could not eliminate the possibility of accidental contact with a dangerous shear point, decal declaring "keep hands and feet away" does not bar a design defect claim).

The Maryland courts have already made clear, however, that warnings will not inevitably defeat liability for a product's defective design. See Klein v. Sears, Roebuck & Co., 608 A.2d 1276, 1282-83 (Md. Ct. Spec. App. 1992) (such warnings as "never leave tool running unattended" and "do not place fingers or hands in the path of the saw blade" are too vague to defeat manufacturer's liability for failing to include blade guards on its saws). Maryland has thus sought to encourage manufacturers to rid their products of traps for the unwary, while declining to hold them responsible for affirmative consumer misuse.

This case involves much more than a consumer's inevitable inattention. Rather, Hood took affirmative steps to remove the safety guards from his saw and -- in contravention of warnings which were "clear, direct, simple, unequivoca[l], unmistakable, definite, and easy to understand and obey" -- then used the saw to cut several pieces of wood. Klein, 608 A.2d at 1282. Hood's own conduct thus caused his injury and defeats any claim that the saw is defective in design.

III.

Warned never to operate his miter saw without the blade guards in place, Hood nonetheless chose to detach those guards and run the saw in a disassembled condition. We hold that Ryobi is not liable for Hood's resulting injuries under any of the theories of recovery raised here. The judgment of the district court is therefore

AFFIRMED.

8