**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-2542**

---

THE HARFORD MUTUAL INSURANCE COMPANY, subrogee
of Carriage Hill Apartments,

Plaintiff - Appellant,

versus

APRIA HEALTHCARE, INCORPORATED,

Defendant - Appellee,

and

MALLINCKRODT, INCORPORATED,

Defendant.

---

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Roger W. Titus, District Judge. (CA-03-
180-RWT)

---

Argued: September 20, 2005          Decided: December 15, 2005

---

Before LUTTIG and GREGORY, Circuit Judges, and Robert J. CONRAD,
Jr., United States District Judge for the Western District of North
Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Jeffrey Allan Wothers, NILES, BARTON & WILMER, L.L.P.,
Baltimore, Maryland, for Appellant.  Gerard Joseph Gaeng, Kevin J.
Pascale, ROSENBERG, MARTIN, FUNK & GREENBERG, L.L.P., Baltimore,

Maryland, for Appellee.  **ON BRIEF:** Jeanie S. Ismay, NILES, BARTON & WILMER, L.L.P., Baltimore, Maryland, for Appellant.  T. Christine Pham, ROSENBERG, MARTIN, FUNK & GREENBERG, L.L.P., Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

The Harford Mutual Insurance Company ("Harford"), subrogee of Carriage Hill Apartments, appeals the district court's grant of summary judgment that Apria Healthcare, Incorporated ("Apria") was not negligent in distributing, delivering, installing and storing oxygen cylinders, nor had it failed to provide adequate warning or instruction for its products. Harford also appeals certain evidentiary decisions of the district court. For the reasons stated below, we affirm the district court's grant of summary judgment on the issues of duty of care and negligence. Because we find that the district court properly granted summary judgment on these issues, we need not reach the issue of its evidentiary decisions.

I.

Harford provides insurance coverage to Carriage Hill Apartments ("Carriage Hill"), an apartment complex in Maryland. In December 1999, one of Carriage Hill's apartment buildings was severely damaged by a fire accidentally started when the five-year old grandson of tenant Daisy Blakes played with matches on Blakes's bed. Harford paid approximately $1.5 million to Carriage Hill to cover this damage.

Apria operates a nation-wide business that delivers such products as cylinders of medical oxygen to its customers' homes.

3

At the time of the events central to this case, Apria had delivered medical oxygen cylinders to Daisy Blakes for several months. When they were delivered, Apria placed its cylinders on a bookshelf in Blakes's seventeen-by-eleven foot bedroom. By December 1999, Blakes's garden apartment contained approximately thirty oxygen cylinders. Twenty-seven cylinders were recovered after the fire.

Harford contends Apria's oxygen cylinders exacerbated the fire. It filed suit against Apria, alleging negligence in failing to properly deliver, install and store medical oxygen cylinders in Blakes's apartment. Specifically, Harford asserted that the relevant paragraphs of NFPA 99, which require gas equipment used in home health care to be stored at least twenty feet from combustible materials or in a "fire rated cabinet", were incorporated into Maryland law, and created a statutory duty of care. In addition, Harford alleged that Apria failed to warn the tenant of the fire and explosion hazards associated with such cylinders. Apria moved for summary judgment, arguing that the standard sought to be applied for oxygen storage was not incorporated into Maryland law, and that no evidence had been offered regarding the alleged defectiveness of the warning label.

The district court granted Apria's motion for summary judgment on all claims. Harford appeals this judgment.

II.

This court reviews <u>de</u> <u>novo</u> a district court's grant of summary judgment. <u>See</u> <u>Monumental Paving & Excavating v. Pennsylvania Mfrs.</u> <u>Assoc. Ins. Co.</u>, 176 F.3d 794, 797 (4th Cir. 1999).

A. Duty of Care

Appellate briefing and oral argument in this case have narrowed this issue to whether the entirety of the National Fire Protection Association's ("NFPA") Model Code 99 ("NFPA 99") has been incorporated into NFPA Model 101, and whether sufficient evidence has been offered that Apria's alleged violation of County Code 11-265 caused the damage.

1. NFPA 101 and NFPA 99

The NFPA is a private association that publishes model codes. Model Code NFPA 99 is entitled "Standard for Health Care Facilities."

Chapter 18 of NFPA 99 is entitled "Electrical and Gas Equipment for Home Care." It "addresses the requirements for the safe use of electrical and gas equipment used for medical treatment outside health care facilities." Paragraph 18-3.8 provides that "[g]as equipment used in the home for health care shall conform to such requirements of Chapter 8 as applicable." Chapter 8 of NFPA 99 addresses the storage requirements for the types of oxygen

5

cylinders that were in Blakes's apartment.  Paragraph 8-3.1.11.2 provides that:

> Oxidizing gases such as oxygen . . . shall be separated from combustibles or incompatible materials by either:
> 1.   A minimum distance of 20 ft (6.1 m); or
> 2.   A minimum distance of 5 ft (1.5 m) if the entire storage location is protected by an automatic sprinkler system designed in accordance with NFPA 13 . . . ; or
> 3.   An enclosed cabinet of noncombustible construction having a minimum fire protection rating of one-half hour for cylinder storage.  An approved flammable liquid storage cabinet shall be permitted to be used for cylinder storage.

Paragraph 8-2.1.2.2 provides examples of combustible materials that may be found near patients, including "hair oils, oil-based lubricants, skin lotions. . .[and] bed linen."

Blakes's bedroom was eleven by seventeen feet.  And the oxygen cylinders were stored on a bookshelf in her bedroom.  There has been no suggestion that the apartment had an automatic sprinkler system.  Therefore, under NFPA 99, the oxygen cylinders arguably should have been placed more than twenty feet away from any combustible materials.  At issue in this case is whether the relevant paragraphs of NFPA 99 have been incorporated into Maryland law.

"NFPA 101" is the 1997 edition of National Fire Prevention Associations Life Safety Code and was incorporated by reference in Maryland's State Fire Prevention Code. Md. Regs. Code. Tit. 29, § 06.01.06(B)(2)(a) (1999).

6

Chapter 33 of NFPA 101 states that the listed "documents or portions thereof are referenced within this Code as mandatory requirements and shall be considered part of the requirements of this Code. . . . The numbers in <u>parentheses</u> represent the paragraph numbers from chapters of this Code that reference the given publication in a mandatory way."  (Emphasis added.)  The reference to NFPA 99 appears as follows:

> NFPA 99, <u>Standard for Health Care Facilities</u>, 1996 edition.
>
> [6-4.4 Exception, 7-2.4, 12-2.9.2, 12-2.10.2, 12-3.2.1, 12-3.2.2, 12-3.2.3, 12-3.2.4, 12-5.1.2, 12-5.1.3, 12-6.2.9.2, 12-6.3.2.1,12-6.3.2.2, 13-3.2.2, 13-3.2.3, 13-3.2.4, 13-6.2.9.2, 13-6.3.2.1,13-6.3.2.2]

The NFPA 101 paragraphs following the NPFA 99 reference each require that NFPA 99 be applied under certain circumstances.  The references from Chapters 6 and 7 apply to laboratories.  Eleven of the nineteen references to NFPA 99 are in Chapter 12, which applies only to "New Health Care Occupancies."  Appellee's Adden.15.  Six of the nineteen references to NFPA 99 are in Chapter 13, which applies only to "Existing Health Care Occupancies."  Paragraph 8-3.1.11.2 does not appear as a mandatory reference.  And none of the other references relate to home use of oxygen use.

Harford maintains that NFPA 101 incorporated the entirety of NFPA 99 by reference, and, therefore, that NFPA 99 has the authority of law in the state of Maryland.  Harford's primary argument involves a parentheses/brackets distinction.  The NFPA 101

7

paragraphs that follow NFPA 99 are enclosed in brackets, not parentheses. The paragraph numbers that follow the other provisions in that section are sometimes in brackets and sometimes in parentheses. Harford contends that "the drafters intended to incorporate all of NFPA 99 into the Life Safety Code since there are no sections appearing in parentheses." (Emphasis added.) We find this argument unpersuasive.

First, Chapter 33 provides that "the listed documents are mandatory only to the extent called for in [101 NFPA]." Thus, it is apparent that Chapter 33 did not effect a wholesale incorporation by reference of Chapter 99.

Second, Harford offers no viable alternative explanation for the numbers in brackets if they are not a listing of the specific incorporations by reference. Moreover, an examination of listed paragraphs reveals that they are sections of NFPA 101 that expressly incorporate certain provisions of NFPA 99 and apply them only to specific situations.[1]

Thus NFPA 99's requirement that oxygen cylinders be stored more than twenty feet from combustible materials is not applicable.

---

[1]The most likely explanation for the alternating use of brackets and parentheses is that, except for NFPA 99, the drafters used brackets when the listed paragraph numbers included a lower case letter enclosed in parentheses. We therefore find that the Life Safety Code's parenthetical references include bracketed material.

### 2. Prince George's County Code § 11-265

Harford also argues there was sufficient evidence before the district court that Apria breached the duty under Prince George's County Code §11-265 regarding storage of compressed gases.[2] We find that this argument also is unpersuasive. Even if it is arguable whether Apria "stored" the cylinders, the district court was correct that no evidence has been identified that the effects of the fire were exacerbated by any alleged failure to secure the tanks. The analysis of Harford's expert, Mr. Leshner, rested upon his primary determination that the cylinders were violently propelled away from the explosion after one of the cylinders failed. There is no indication from Leshner, or anyone else, that any of the cylinders failed because they fell or were knocked over.

Thus, we find that Harford has failed to show that any violation of § 11-265 caused the damage alleged to have occurred.

### B. Failure to warn

Harford asserts that the warnings on the cylinder labels are defective because they "do not warn of explosions when the cylinders are exposed to fire if not properly stored." We likewise find this argument unpersuasive. These labels state, "WARNING HIGH

---

[2]Prince George's County Code, Title 17, Subtitle 11, Division 4, § 11- 265(b)provides, "[a]ll compressed gas cylinders in service or in storage shall be secured to prevent falling or being knocked over."

PRESSURE OXIDIZING GAS VIGOROUSLY ACCELERATES COMBUSTION." The accompanying manual states, "Keep cylinders and oxygen tubing at least five feet from any source of heat."

"Maryland does not require an encyclopedic warning." Hood v. Ryobi America Corp., 181 F.3d 608, 610 (4th Cir. 1999). Instead, "a warning need only be one that is reasonable under the circumstances." Id. (quoting Levin v. Walter Kidde & Co., 248 A.2d 151, 153 (Md. 1968)). In this case, the user was reasonably cautioned that combustion would be "vigorously accelerated" and that the cylinders and tubing should be kept at least five feet away from any heat source.

Harford contends on appeal even if adherence to NFPA 99 is not mandatory in this situation, the MSDS provides some support for the application of NFPA 99 standards. Incorporation of these standards, however, still would not seem to warn of any possible explosion. Because a warning need not be "encyclopedic," Hood,181 F.3d at 610, and the warnings given in this case were "reasonable", we find that Harford has presented insufficient evidence to the contrary to survive summary judgment.

### III.

For the reasons stated herein, we affirm the district court's grant of summary judgment.

<u>AFFIRMED</u>