527 A.2d 1337

**Lorenzo SIMPSON, Jr., a Minor, etc., et al.**

v.

**STANDARD CONTAINER COMPANY, et al.**

**No. 1555, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

July 14, 1987.

Certiorari Denied Dec. 9, 1987.

Leslie L. Gladstone, Baltimore, for appellants.

William J. Jackson (James E. Gray and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellees.

Argued before MOYLAN, WILNER and ROBERT M. BELL, JJ.

MOYLAN, Judge.

This is an appeal in a products liability case. The appellants, Lorenzo Simpson, Jr., and his parents, Lorenzo Simpson and Margo James, brought suit in Baltimore City Circuit Court alleging four counts against the appellees, Standard Container Company and K–Mart Corporation. Count 1 claimed a cause of action under strict liability; Count 2 asserted a cause of action in negligence; Count 3 alleged breach of implied warranties of merchantability and fitness and Count 4 made a claim on behalf of the parents for loss of services and medical expenses. The appellees filed answers and, pursuant to Md.Rule 2–322(b), filed motions to dismiss alleging that the appellants failed to state a claim upon which relief could be granted. The appellants filed an answer to the motion and a hearing was held. Judge Thomas Ward granted the appellees' motions to dismiss, and the appellants appeal.

The appellants raise the following issues upon appeal:

1. That the lower court erred in granting the appellees' motions to dismiss because the appellants properly pleaded a cause of action for strict products liability;

2. That the lower court erred in granting the motions to dismiss because the appellants properly pleaded the elements of a negligence action; and

3. That the lower court erred in granting the appellees' motions to dismiss because the appellants properly pleaded the elements of a breach of warranty claim.

In the spring of 1985, Mr. Ramesh Oza, a neighbor of the appellants, purchased a new 1½ gallon heavy-duty gasoline can from a K–Mart store. The container was manufactured by Standard Container Company. Mr. Oza used the can once, having filled it with a quantity of gasoline. After

screwing on the lid of the container, Mr. Oza stored the can on his basement floor.

On May 14, 1985, four-year-old Lorenzo Simpson, Jr., one of the appellants, visited the Oza home in order to play with four-year-old Summit Oza. While playing, the children went into the basement. They removed the cap from the gasoline container and poured or spilled gasoline onto the basement floor. The resultant vapors ignited and Lorenzo Simpson, Jr. was severely burned. The Oza child perished in the fire.

The appellants reached a settlement with the Oza's liability insurance carrier and then filed this products liability case. In their complaint, the appellants alleged that the gasoline container was defective and unreasonably dangerous because the container was designed without a childproof cap. During the hearing on the appellees' motions to dismiss, the appellants proffered evidence in addition to the factual allegations in the complaint. Photocopies of the four vertical sides of an identical gasoline can were placed into the record.

Judge Ward considered all of the factual allegations and the proffers and concluded that the appellants had not stated a legally sufficient cause of action under Maryland law. He dismissed the action.

### Strict Liability

The appellants argue that they properly stated a cause of action in strict liability. The appellants alleged that the gasoline can was defective and unreasonably dangerous to users at the time the container left the control of the appellees "due to the absence of a childproof cap which would have rendered the can substantially safer to smaller children." They further alleged that the defective can proximately caused Lorenzo Simpson, Jr.'s physical injuries. Finally, it was alleged that the appellees knew or should have known or had reason to know that there was an

unreasonable danger of serious injury in distributing the gasoline can without a child-proof cap.

The Court of Appeals adopted the theory of strict liability of sellers of products in *Phipps v. General Motors Corp.,* 278 Md. 337, 363 A.2d 955 (1976). The Court in *Phipps,* relying on Restatement (Second) of Torts § 402A (1965), set forth the essential elements of a strict liability action:

"For recovery, it must be established that (1) the product was in a defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition."

*Phipps,* 278 Md. at 344, 363 A.2d 955. The Court went on to say that the focus in a strict liability case is not on the manufacturer, but on the product. Thus, the critical inquiry is whether a product is defective.

■ A product may be defective for any one of three reasons. *See Prosser and Keeton on The Law of Torts* § 99 (W. Keeton 5th ed. 1984). First, there may be a flaw in the product at the time the defendant sold it, making the product more dangerous than was intended. *See, e.g., Eaton Corp. v. Wright,* 281 Md. 80, 375 A.2d 1122 (1977); *Lahocki v. Contee Sand & Gravel Co.,* 41 Md.App. 579, 398 A.2d 490 (1979), *rev'd on other grounds,* 286 Md. 714, 410 A.2d 1039 (1980). Second, a producer of a product may fail to warn adequately of a risk or hazard related to the way a product was designed. *See, e.g., Troja v. Black & Decker Mfg. Co.,* 62 Md.App. 101, 488 A.2d 516 (1985). Finally, a product may be defective in its design. *See, e.g., Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 495 A.2d 348 (1985). The appellants' contention involves this third category.

To determine whether a product is defective in its design, Maryland cases have generally used the "consumer expectation" test. *Kelley v. R.G. Indus., Inc.,* 304 Md. 124, 497 A.2d 1143 (1985); *Phipps v. General Motors Corp.,* 278 Md.

337, 363 A.2d 955 (1976). The test was explained in *Phipps*, 278 Md. at 344, 363 A.2d 955, as follows:

"For a seller to be liable under § 402A, the product must be both in a 'defective condition' and 'unreasonably dangerous' at the time that it is placed on the market by the seller. Both of these conditions are explained in the official comments in terms of consumer expectations. As Comment g explains, the requirement of a defective condition limits application of § 402A to those situations where 'the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.' An 'unreasonably dangerous' product is defined in Comment i as one which is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics'."

■ The cases have also discussed an alternative test for determining whether a product is defectively designed, the "risk-utility" test. *Phipps*, 278 Md. at 345, 363 A.2d 955, *Kelley*, 304 Md. at 136–139, 497 A.2d 1143. In *Troja v. Black & Decker Mfg. Co.*, 62 Md.App. 101, 488 A.2d 516 (1985), the test was applied. Under the "risk-utility" test, a product is defective as designed if the risk or danger of the product outweighs the product's utility. The appellants urge that the danger of a child's spilling gasoline and having the gas ignite was recognizable and foreseeable and that a gasoline container equipped with a child-proof cap was available in the industry at a nominal cost. Therefore, the risk far outweighed the utility of the container without the child-proof cap and the design was defective.

■ We have no quarrel with the appellants' assertions regarding the application of the "risk-utility" test. The appellants correctly point out that no Court of Appeals case has expressly relied on the "risk-utility" test. Whether or not we apply the "risk-utility" test in this case, however, the outcome will be the same because misuse of the product

and failure to read or follow the product's warnings and instructions are defenses to strict product liability. *Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. at 596–598, 495 A.2d 348.

In *Ellsworth,* the plaintiff was severely burned when the flannelette nightgown she was wearing ignited after she came in close proximity to a front burner on the electric stove in her kitchen. The plaintiff sued the seller and manufacturer of the nightgown on three grounds: strict liability, negligence, and breach of implied warranty of fitness. The verdicts were for the defense and the plaintiff appealed, claiming the trial court gave erroneous jury instructions on misuse of a product as a defense to the strict liability claim. The Court of Appeals eventually reversed the trial court, stating that there was insufficient evidence of misuse to generate an issue for the jury to consider but not before thoroughly discussing misuse and other defenses to strict liability.

The Court began by looking to Comment h of Restatement (Second) of Torts § 402A, which provides:

"A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling, as where a bottled beverage is knocked against a radiator to remove the cap, or from abnormal preparation for use, as where too much salt is added to food, or from abnormal consumption, as where a child eats too much candy and is made ill, the seller is not liable."

The Court pointed out that problems arise in understanding the issue of misuse because of

"the absence of agreement as to the meaning of the word. Misuse has been defined as: a use not reasonably foreseeable ... a use of the product in a manner which defendant could not reasonably foresee ... a use of a product where it is handled in a way which the manufacturer could not have reasonably foreseen or expected in the normal and intended use of the product and the plaintiff could foresee an injury as the result of the

unintended use ... a use or handling so unusual that the average consumer could not reasonably expect the product to be designed and manufactured to withstand it—a use which the seller, therefore, need not anticipate and provide for ... use of the product which constitutes wilful or reckless misconduct or an invitation of injury." (Citations omitted.)

*Ellsworth*, 303 Md. at 594–595, 495 A.2d 348. The Court concluded that "reasonable foreseeability" was the appropriate test. "[T]hus a seller is required to provide a product that is not unreasonably dangerous when used for a purpose and in a manner that is reasonably foreseeable.... [I]f the product is not unreasonably dangerous when used for a purpose and in a manner that is reasonably foreseeable, it simply is not defective, and the seller will not be liable." *Ellsworth*, 303 Md. at 596, 495 A.2d 348. In applying a "foreseeability" test, courts must be extremely careful, because, with the benefit of hindsight, any accident could be foreseeable. Without care, the imposition of strict products liability could result in a manufacturer's becoming an insurer for every injury that may result from its product. *See Phipps*, 278 Md. at 351–352, 363 A.2d 955.

■ In this case, the Ozas stored the gasoline can in the basement of their home, ignoring the admonitions on the sides of the can not to store it in living areas. The Ozas stored the can in an area which allowed two unsupervised four-year-olds access to the can. The gasoline can was not being used for the purpose and in a manner that was reasonably foreseeable. As a matter of law, there was a misuse of this product and misuse negates the element of defect.

■ Misuse is not the only ground upon which our decision rests. Comment j to Restatement (Second) of Torts § 402A, states:

"Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is

followed, is not in defective condition, nor is it unreasonably dangerous."

The gasoline can had warnings written on two of the four sides proclaiming "Keep Out of Reach of Children" and "Do Not Store in Vehicle or Living Space." The appellees provided adequate warnings which went unheeded. The product was not in a defective condition nor was it unreasonably dangerous. The appellants failed to state a cause of action for strict products liability under Maryland Law.

### Negligence

■ The appellants essentially pleaded that the gasoline can had a cap insufficient to keep young children from removing it, that the appellees knew or should have known that it would be dangerous when accessible to children, and that Lorenzo Simpson, Jr. was severely injured due to the negligence of the appellees.

The danger inherent in a full gasoline container is patent and obvious. Mr. Oza opened and closed the can at least two times. He was fully aware that the can did not have a child-proof cap. As we have said before in *Banks v. Iron Hustler Corp.*, 59 Md.App. 408, 423, 475 A.2d 1243 (1984):

"[W]e can neither overrule nor ignore the decisions of our Court of Appeals. We are bound by *Myers, Blankenship, Patten,* and *Volkswagen of America,* and thus are constrained to conclude that, if the danger in the product is patent, the injured plaintiff may not recover on a theory of negligence."

The trial court properly dismissed the negligence claim.

### Warranty Claim

■ To state a cause of action for breach of implied warranty of merchantability under Md.Com. Law Code Ann. § 2–314, the appellants must allege that the gasoline can was not fit for the ordinary purposes for which the can was used. The appellants failed to allege any facts that implied the can was not fit for its ordinary use, namely the storage of gasoline. The trial court correctly dismissed the claim.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.