Kevin P. HIGGINS, et al.

v.

**E.I. DUPONT DE NEMOURS & CO., INC.**

Civ. Nos. S–18–4896, S–87–1108.

United States District Court, D. Maryland.

Sept. 30, 1987.

Alex S. Katzenberg, Cohen, Snyder, McClellan, Eisenberg, P.A., and James M. Gabler, Phillips P. O'Shaughnessy, Alison D. Kohler, Sandbower, Gabler & O'Shaughnessy, P.A., Baltimore, Md., for plaintiffs.

William E. Gordon, Jr., Wilmington, Del., and Jervis S. Finney, Pamela J. White, Ober, Kaler, Grimes & Shriver, Baltimore, Md., for defendant DuPont.

SMALKIN, District Judge.

### I.

This products liability case has already been the subject of one published opinion, 671 F.Supp. 1055 (D.Md.1987), in which this Court granted summary judgment in favor of two suppliers of constituent chemicals used in the manufacture of defendant DuPont's Imron paint. The facts of the case were fully stated in the Court's earlier published opinion, and will be repeated only briefly here. The matter is currently before the Court on the motion of the remaining defendant, DuPont, for summary judgment, which was briefed in accordance with the Court's letter scheduling order of July 14, 1987. Plaintiffs have responded thereto. No oral hearing is necessary. Local Rule 6, D.Md.

The remaining plaintiffs in this case are the parents of two sets of twins who died at or shortly after birth. Both fathers, Mr.

Higgins and Mr. Jones, were firefighters with the Baltimore City Fire Department. The essential facts pertinent to their involvement with Imron paint are undisputed. Imron was advertised by DuPont for sale through distributors for use by industrial professionals, such as fleet truck and transit systems and manufacturers of aircraft, fire engines, heavy duty construction equipment, and utility vans. Imron was sold and delivered by DuPont to C & R Paint Supply, Inc., which in turn, sold and delivered the product (along with other paint supplies) to the Key Highway repair yard of the Baltimore City Fire Department, where fire apparatus was regularly painted. From 1979 to 1985, the City Fire Department's Key Highway facility distributed quantities of Imron in both marked (*i.e.*, with DuPont's labels affixed) and unmarked one-gallon paint cans, coffee cans, or glass jars to, *inter alia*, the plaintiffs, members of Engine Company No. 1, for their use in touching up fire apparatus in the firehouse. The City, which is no longer a party to this lawsuit, did not provide the plaintiffs or other firefighters with any separate instructions or warnings as to the use of Imron, or with protective clothes (aside from, occasionally, face masks) to wear while applying the Imron paint. The plaintiffs applied the Imron, and they subsequently became the parents of stillborn twins born on January 1, 1982 (Higgins), and twins who died just after their birth on September 11, 1983 (Jones). (The complaint alleges that the stillbirths and deaths were due to the teratogenic effects of Imron.)

It is undisputed that DuPont's distributor, C & R, never dealt with, delivered, or sold any Imron products directly to the firehouses of Baltimore City. It is also undisputed that material safety data sheets (MSDSs) were provided to the Baltimore City Fire Department, and, most significantly, that the labels affixed to the Imron products sold by C & R to the City Fire Department prominently stated, both before and after 1979:

> FOR INDUSTRIAL USE ONLY by professional, trained personnel. Not for sale to or use by the general public.

The accompanying label instructions and warnings required the use of a supplied-air respirator, eye protection, gloves, protective clothing, and adequate ventilation. (Plaintiffs have identified one 1978 label, out of a large pile of Imron labels furnished them during discovery, that does not contain the respiratory and skin exposure precautions just described. This label is not relevant to the issues in this case, where plaintiffs' use of Imron only in 1979 and later is alleged, and where the first set of twins was not born until 1982. Thus, the Court must accept as true the DuPont contention that Imron, during the period relevant to this suit, was labelled with precautions including respiratory, eye, and skin protection, as recited above.) The labels carried no specific warning, though, of possible teratogenic effects of the product.

## II.

### A.

There is absolutely no dispute that, even in 1978, all Imron labels contained specific warnings against its use by anyone other than "professional, trained personnel." This warning was conspicuously placed on the front of the Imron label, preceded by an upper case warning, "FOR INDUSTRIAL USE ONLY." Although the plaintiffs dispute whether the use to which this paint was put was an "industrial use," they do not and cannot dispute that the plaintiffs were not "professional, trained personnel" in the art of paint application. Indeed, review of the Jones affidavit, especially at paragraphs 6 and 7, shows that, while the plaintiffs might have been welltrained, professional firefighters, their paint application techniques were anything but professional. They wore only their fire department work uniforms (which were taken home to be laundered), with no protective clothing at all, mixing the paint in paper cups without gloves, and even occasionally stirring it with their fingers. There clearly is no factual dispute that the plaintiffs were not "professional, trained personnel," in the obvious sense that term was used on the Imron label. Had plaintiffs been "professional, trained personnel," it is utterly

inconceivable that they would have disregarded the post–1978 label admonitions about the need for respiratory, eye, and skin exposure protection while handling Imron.

### B.

Whether the fault of DuPont in this case be conceptualized as a "design defect" or as a "labelling defect," and whether its liability be predicated upon negligence, strict liability under *Restatement (Second) of Torts* § 402A (1965), or breach of warranty, it is clear that if the Court can say as a matter of law that the plaintiffs' manner of use of the product cut off the chain of proximate causation, the defendant is entitled to summary judgment. In this regard, the Court finds persuasive the commentary in White and Summers, *Uniform Commercial Code* § 11–8 (2d ed. 1980), that no matter how described or under what theory asserted, behavior by the plaintiff that cuts off the chain of proximate causation is a bar to recovery on product liability claims. Maryland law is in agreement with White and Summers in disregarding, with regard to a plaintiff's misbehavior, any strict pigeon-holing exercise regarding the underlying product liability theory. *See Erdman v. Johnson Bros. Radio and Television Co.*, 260 Md. 190, 271 A.2d 744 (1970). The Maryland courts have consistently recognized that a plaintiff's product misuse, including failure to heed a manufacturer's warnings, can bar product liability recovery, as a matter of law. *See, e.g., Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 595–98, 495 A.2d 348, 355–56 (1985); *Simpson v. Standard Container Co.*, 72 Md.App. 199, 204–06, 527 A.2d 1337, 1340–41 (1987). It is true that, in most cases, resolution of the question of misuse, as with questions of proximate cause generally, is for the trier of fact. *See Ellsworth*, 303 Md. at 598, 495 A.2d at 356–57. But, as the Court of Special Appeals stated in *Simpson*, in assessing whether there is a sufficient jury question as to foreseeability (and, thus, proximate cause), "courts must be extremely careful, because, with the benefit of hindsight, any accident could be foreseeable." 72 Md.App. at 206, 527 A.2d at 1341.

█ In the instant case, there were two kinds of Imron containers distributed to plaintiffs—marked and unmarked. This Court holds, first, as a matter of law, that the conduct of the Baltimore City Fire Department, in distributing the Imron constituents to the plaintiffs in marked and unmarked containers, was a misuse of the product by the Fire Department that was not reasonably foreseeable, in light of the labels' clear and conspicuous warning against the use of the product by amateur painters. With specific regard to Imron that reached the plaintiffs in containers with original labels, there is no dispute that, at all times, the labels warned against nonprofessionals' use and, during the period here in question, gave clear warnings as to the need for comprehensive protection against respiratory, eye, and skin exposure. It was certainly not foreseeable to DuPont, as a matter of law, that the paint would be distributed by its purchasers to amateur painters and that if the paint reached the hands of amateurs, it would be applied in contravention of clear label warnings. In short, having warned users that they must be professional, trained paint applicators, DuPont acted in a way sufficient to warn the consuming public that the product was not for use by amateurs such as Higgins and Jones, and their emergence as users of the product was, thus, not reasonably foreseeable to DuPont. The chain of proximate causation between DuPont's manufacturing conduct and their injuries was therefore severed. To submit these issues to a jury could result in what the Court of Special Appeals of Maryland, taking its lead from the Court of Appeals, cautioned against in *Simpson*, 72 Md.App. at 206, 527 A.2d at 1341, *i.e.*, making DuPont a virtual insurer against injuries arising from its product, where it had taken adequate steps to restrict the use of the product to a limited class of persons, a class from which the plaintiffs are indisputably excluded.

█] The Court notes that the situation in this case is unlike that posed in *Khan v. Velsicol Chemical Corp.*, 711 S.W.2d 310

(Tex.App.—Dallas 1986), in which third parties were injured by a professional's misapplication of the product, which was labelled for professional use only. *See id.* at 316–17. Certainly, it is reasonably foreseeable that pesticides will have an effect upon persons in the vicinity of their use, and a label warning restricting use of the pesticide to professional applicators only cannot as a matter of law be held adequate to bar recovery by third parties, in view of the obvious unpredictability of individual applicators' behavior. In the instant case, the plaintiffs were not bystanders injured by the acts of trained, professional applicators. Rather, they were, themselves, doing a job which ought to have been done, and which DuPont could only reasonably foresee was to be done (in light of the nature of the product and its labelling) by such applicators. Hence, plaintiffs and their employer "misused" the product in the sense relevant to products liability cases; that is, they behaved in such a way as to cut off the chain of proximate causation, whether the original product defect be viewed as inadequate or unsafe design (use of teratogenic constituents) or inadequate labelling (failure to warn specifically against teratogenic effects). Of course, the chain of proximate causation is all the more cleanly cut here because of the conduct of the Baltimore City Fire Department. This Court concludes that the Fire Department's distribution of the paint for use in firehouses, whether in original containers or repackaged, was unforeseeable by DuPont as a matter of law and, hence, constituted an intervening, superseding cause that cut off DuPont's product liability. *Cf. Jones v. Baltimore Transit Co.,* 211 Md. 423, 127 A.2d 649 (1957).

Because the plaintiffs in this case could not prove proximate causation by a preponderance of the evidence were this case in a directed verdict posture, the Court must now grant the defendant's summary judgment motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Or course, a sympathetic jury might be tempted to find the requisite causal link, especially given the tragic deaths of the neonates, but such a finding would not be *reasonable* in light of the steps that DuPont took to restrict the use of this product to a class of users that plainly excluded these plaintiffs. Thus, summary judgment is appropriate under *Anderson.*

This Court recognizes that, to a certain extent, the matters discussed above are judgmental questions of degree, as to whether a jury question is presented. However, given the recent decision in *Simpson,* this Court is of the opinion that the Maryland courts are resistant to the imposition of product liability upon manufacturers who take reasonable steps to keep people from hurting themselves with their products. In this case, DuPont did what it could to keep people like the plaintiffs from getting hold of the paint, from sticking their fingers in it, from applying it in ordinary work clothes, and from otherwise using Imron in ways that a layman would be expected to use it. DuPont did this by marketing the paint to industrial users, for use by professional painters, and by so advising everyone in the product labels. It is simply a matter of common sense that professional, trained applicators would not have done what plaintiffs did with the Imron paint, and that they would have followed the label precautions. Given the plaintiffs' status as persons clearly outside this pale, who did not follow instructions, the Court need not speculate on whether the label warnings would have been adequate to prevent injury to trained, professional paint applicators. Consequently, this Court is convinced that, were the facts of this case before it, the Court of Appeals of Maryland would not hesitate to hold that there is no jury issue presented. *See Wilson v. Ford Motor Company,* 656 F.2d 960 (4th Cir.1981).

For the reasons stated, an order and judgment will be entered separately, granting defendant DuPont's motion for summary judgment.