876 A.2d 100

**LIGHTOLIER, A DIVISION OF GENLYTE THOMAS GROUP, LLC**

**v.**

**David HOON et al.**

**No. 117, Sept. Term, 2004.**

Court of Appeals of Maryland.

June 21, 2005.

540

542

Stephen E. Marshall (Maria E. Rodriguez of Venable LLP of Baltimore), on brief, for petitioner.

Peter A. Muhic (Peter G. Rossi of Cozen O'Conor of Philadelphia, PA; Allan A. Noble of Budow and Noble, P.C. of Bethesda), on brief, for respondents.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

This case arises from the occurrence of a fire that caused substantial damage to the home of David and Texie Hoon ("the Hoons"). At issue is whether the manufacturer of a recessed light fixture that gave rise to the fire when it was later improperly surrounded by thermal insulation can be strictly liable under a product liability theory when warnings existing on both the light fixture itself and the instruction manual accompanying it clearly warned of a risk of fire if the light fixture was placed in close proximity to thermal insulation.

On November 15, 1999, the Hoons and their insurer, Federal Insurance Company, respondents, filed a complaint in the Circuit Court for Kent County against numerous defendants including Lightolier, a Division of Genlyte Thomas Group, LLC ("Lightolier"), petitioner, with the specific claims against Lightolier being for negligence, breach of warranty and product liability—defective design. Lightolier, a designer and manufacturer of lighting products, including the light fixture alleged to have been involved in starting the fire that damaged the Hoons' home, thereafter filed a motion for summary judgment with the Circuit Court on March 15, 2002. On April 15, 2002, the Circuit Court granted Lightolier's motion for summary judgment.

The Hoons thereafter filed an appeal to the Court of Special Appeals. On September 15, 2004, the intermediate appellate court issued its opinion, *Hoon v. Lightolier*, 158 Md.App. 648, 857 A.2d 1184 (2004), which reversed the Circuit Court's granting of Lightolier's motion for summary judgment. On November 1, 2004, Lightolier filed a Petition for Writ of Certiorari to this Court. On December 17, 2004, we granted the petition. *Lightolier v. Hoon*, 384 Md. 448, 863 A.2d 997 (2004). Lightolier presents one question for our review:

"Where a manufacturer supplements its undisputedly sufficient warnings accompanying its product with an additional safety feature, does the manufacturer forfeit its right to assume that those warnings will be read and heeded, such that misuse of the product in direct contravention of those warnings is no longer deemed the proximate cause of dam-

ages under the law, even though the product is safe for use when the warnings are followed?"

We hold that, because adequate warnings were placed on the Lightolier light fixture at issue that warned of the risk of fire if thermal insulation was thereafter placed within three inches of the light fixture, and it is undisputed that the fire would not have occurred if these warnings had been heeded, the proximate cause of the fire was the negligent placement of thermal insulation within three inches of the already installed light fixture, thereby resulting in a misuse of the fixture. Therefore, the Circuit Court properly entered summary judgment in favor of Lightolier upon its motion.

## I. Facts

### A. The Hoons' Home Renovation and Ensuing Fire

While in the process of making extensive renovations to their Chestertown, Maryland home, David and Texie Hoon designated that non-IC rated recessed light fixtures [1] be in-

---

1. "IC" stands for "Insulated Ceiling" and is a commonly used acronym with respect to recessed lighting. With respect to recessed lighting any recessed fixture that is in direct contact with thermal insulation must carry an IC rating. This makes IC rated fixtures the choice for the ceiling on the top floor of a home, which is typically blanketed with thermal insulation, and any other area where insulation is used. Non–IC rated fixtures are commonly used in areas away from insulation as they are not intended for insulation contact.

 The July 2004 "Luminaire Marking Guide," which was written by the Underwriters Laboratories Inc. (responsible for the "UL" symbol found on all approved electric lights) and "describes a marking [on a lighting unit] and briefly explains the meaning and terminology of the marking," explains the markings to be found on both IC and non-IC rated light fixtures:

 > **"RECESSED LUMINAIRE MARKINGS**
 > . . .
 > **55. TYPE NON–IC**–Recessed luminaires that are not suitable for installation in direct contact with thermal insulation or combustible materials (Type Non–IC) are marked 'DO NOT INSTALL INSULATION WITHIN 76 mm (3 in) OF ANY PART OF THE LUMINAIRE.'
 > **56. TYPE IC**–A luminaire marked 'TYPE IC' may be installed where insulation is placed in direct contact with the sides and the top of the luminaire. Recessed luminaires not marked 'TYPE IC' are intended

stalled in certain areas of their home. These non-IC rated fixtures were manufactured by Lightolier, Model 1002P1, and purchased in "early 1998." The actual installation of these non-IC rated fixtures was performed by Westwind Construction Company ("Westwind"), a company partly owned by David Hoon that acted as both the general contractor responsible for the renovations to the Hoons' home and as the electrical contractor. Printed on each of the Lightolier non-IC rated fixtures in large red letters was the following warning:

#### "WARNING—RISK OF FIRE

DO NOT INSTALL INSULATION WITHIN 3 INCHES OF FIXTURE SIDES OR WIRING COMPARTMENT NOR ABOVE FIXTURE IN SUCH A MANNER TO ENTRAP HEAT."

This warning was notice that subsequent improperly installed insulation would constitute a misuse of the previously installed light fixture. Thus, the Hoons were on notice of a responsibility to ensure that installers properly installed the thermal insulation. An identical warning was also found in a prominent enclosed box on page one of the instruction manual accompanying each of the Lightolier non-IC rated fixtures. Such warnings are in accordance with the language found in § 410–66 of the National Electric Code [2] ("NEC"), which states:

**"410–66. Clearance and Installation.**

. . .

**(b) Installation.** Thermal insulation shall not be installed within 3 in. (76 mm) of the recessed fixture enclosure,

---

to be installed where insulation is kept at least 3 inches from its sides and from its top such that heat is not entrapped."

**2.** The National Electric Code is a "model code promulgated by the National Fire Protection Association." *Edison Elec. Inst. v. Occupational Safety & Health Admin.,* 849 F.2d 611, 614 (D.C.Cir.1988). The NEC's purpose is to specify how electrical devices and materials should be installed from a safety standpoint.

wiring compartment, or ballast, and shall not be so installed above the fixture so as to entrap heat and prevent the free circulation of air.

*Exception: Recessed fixtures identified as suitable for insulation to be in direct contact with the fixture.*[3]" [Footnote added.]

Attached to each of the Lightolier non-IC rated fixtures was what is known as a self-heating thermal protector ("SHTP"), which was located about three inches from the base of each fixture.[4] The SHTP is designed to detect excessive heat entrapped around the fixture and to "open" a small circuit inside the SHTP, causing the electric current to the fixture to be cut off when such a buildup of heat occurs; the lights then would "cycle" (turn off and then back on after the SHTP cooled). The SHTP is designed to begin cycling the light if the temperature around the light fixture exceeds 90C (194F). This cycling of the light also has an important secondary effect—the blinking effect of the cycling alerts the installer or consumer that there may be a problem with the light that requires inspection.[5] A label attached to each non-IC rated fixture stated:

"NOTICE—THERMALLY PROTECTED FIXTURE BLINKING LIGHT MAY INDICATE INSULATION TOO CLOSE TO FIXTURE, OR IMPROPER LAMP."

---

3. This exception refers to an IC rated fixture.

4. Lightolier diagrams of its Model 1002P1 non-IC rated fixture show that the SHTP is attached to the outer part of the "Junction Box," which sits atop the mounting bars and mounting frame of the fixture. A description of the SHTP states that it "[m]eets NEC and UL requirements. Insulation must be kept 3" away from fixture sides and wiring compartments and must not be placed above fixture in a manner which will entrap heat."

*See* http://www.lightolier.com/MKACatpdfs/1002P1.PDF.

5. It appears from the record that the Lightolier non-IC rated fixture would cycle, and therefore blink, indefinitely until the cause of the overheating (*e.g.*, incorrect wattage of bulb or, as here, insulation placed too close to fixture) was remedied, *but the fixture would not permanently turn off.* The rate at which the light cycled/blinked would be dependent on how quickly it cooled so as to be safe to turn on again.

Notwithstanding the addition of SHTPs to non-IC rated fixtures, they remain non-IC rated fixtures *and are not considered IC rated.* Therefore, a non-IC rated fixture, even with a fully operational SHTP, is not to be used in an insulated ceiling where insulation exists or may come to exist within three inches of the fixture.

At some time after the non-IC rated fixtures were installed in the Hoons' home, Gede Insulation, LLC ("Gede") installed blown-in cellulose insulation into the ceiling area where certain Lightolier non-IC rated fixtures had been placed. It is undisputed that Gede placed the thermal insulation in direct contact with the non-IC rated fixtures without regard to the warning labels on those fixtures concerning the risk of fire.

On November 2, 1998, a fire caused substantial damage to the Hoons' home. The fire marshal who investigated the fire concluded that it originated above the ceiling in the rear hallway of the first floor of the Hoons' home near one of the Lightolier recessed light fixtures, most likely due to a problem with the light fixture itself or with the thermal insulation being placed too close to the fixture. It is now undisputed that the fire started because of direct contact between the thermal insulation and the non-IC rated fixture.

The record indicates that at some time prior to the fire two other Lightolier non-IC rated fixtures, which were both located in the Hoons' kitchen, began to blink. The Hoons saw the blinking occurring, investigated the cause, and saw that these two light fixtures were covered in insulation in violation of their warnings. Thereafter, the insulation was removed from the area surrounding those two non-IC rated fixtures. The Hoons, however, never examined the proximity of insulation to the non-IC rated fixtures in the rear hallway of the first floor, which is where the fire originated, alleging that the danger was not apparent because the non-IC rated fixture at the fire's point of origin never blinked as to indicate overheating.

### B. Circuit Court Proceedings

On November 15, 1999, the Hoons filed a multi-count complaint in the Circuit Court for Kent County against numerous

defendants, including both Lightolier and Gede. As noted, the claims against Lightolier were for negligence, breach of warranty and product liability—defective design. Basically, the Hoons based these claims against Lightolier on allegations that the SHTP of the non-IC fixture where the fire originated did not work properly and that this malfunction made Lightolier liable for the damages caused by the fire. The claims against Gede were for negligence and breach of contract. Specifically, the Hoons claimed that "Gede breached its duty in that it did install the insulation too close to the light fixture as a result of which heat was accumulated and concentrated and igniting the wood frame and other combustible portions of the residence." [6]

During pretrial discovery, the Hoons identified three experts who agreed that, if Gede had not installed the insulation within close proximity or in actual contact with the non-IC rated fixture, an act in direct contravention of Lightolier's instructions and warnings, the fire would not have occurred. One of the Hoons' expert witnesses, however, Dr. Thomas Eager, additionally commented that the location of the SHTP in the non-IC rated fixture was defectively designed and "unreasonably dangerous." Dr. Eager based this opinion on his belief that, because "[t]he thermal sensor was not located at the hottest region of the light fixture[,][t]he presence of the insulation made this sensor ineffective in controlling over-temperature conditions."

On March 15, 2002, Lightolier filed a motion for summary judgment in the Circuit Court, arguing:

> "The well-established doctrine of misuse precludes [the Hoons] from recovering from Lightolier. According to [the Hoons], a non-IC rated, Lightolier recessed light fixture substantially contributed to a fire that caused significant damage to the Hoons' real and personal property. Even if the Lightolier fixture was the heat source for this fire, the only material that could have combusted was cellulose insu-

---

6. The record indicates that, after suit was filed, the Hoons reached a settlement with Gede.

lation installed within three inches of the fixture. It is undisputed that (1) someone misused the fixture by installing insulation within three inches of the fixture and (2) by installing insulation too closely to the fixture, Gede Insulation, LLC acted contrary to warnings on the fixture, to warnings in the instruction booklet accompanying the fixture, and to common knowledge in the insulation and construction industry. According to [the Hoons], had Gede adhered to the warnings on the product, their damages would not have resulted. As a result, [the Hoons] cannot prove that the Lightolier fixture was defective, unreasonably dangerous, or the proximate cause of their damages and Lightolier is entitled to summary judgment as a matter of law . . . ." [Alterations added.]

On April 15, 2002, the Circuit Court granted Lightolier's motion for summary judgment, stating:

"The Court finds that the warnings placed on the light fixture and in the instructions were adequate. The Court finds that the manufacturer of the light is entitled to believe that one installing the light together with any insulation that may be applied near it would heed the warnings. The failure to heed the warning in this case is the proximate cause of the fire. Further, the Court finds that the [Hoons] were on further notice that there may be problems with the insulation and the cause of the fire by the fact that other fixtures operated properly causing them to blink and indicating problems. If there is a problem with one fixture with blown-in insulation, the Court finds that one is on notice that there may be problems with other fixtures and that they should be checked. The Court finds that the subsequent malfunction or improper design of the [SHTP] switch on this particular lamp . . . that its failure to operate in this particular case does not provide the [Hoons] with another avenue for the jury to make a determination because the Court finds, for the [] reasons stated, that the Defendant Lightolier is entitled to judgment as a matter of law." [Alterations added.]

### C. Court of Special Appeals Proceedings

On appeal to the Court of Special Appeals, the court stated that "[t]he major issue presented in this appeal is whether the motions judge was legally correct in granting summary judgment on the ground that the third party's failure to heed the manufacturer's warning was the sole proximate cause of the fire." [7] *Hoon,* 158 Md.App. at 651, 857 A.2d at 1185.

Recognizing that " 'there may be more than one proximate cause of an accident,' " *id.* at 655, 857 A.2d at 1188, the intermediate appellate court held that "a jury could reasonably find that there were two concurrent proximate causes of the fire ... (1) Gede's negligence in failing to heed Lightolier's warning and (2) Lightolier's defective design (or negligent manufacture) of the SHTPs." *Id.* at 672, 857 A.2d at 1197. Because of what it considered to be this possible additional proximate cause of the fire, the Court of Special Appeals held that the Circuit Court erred in granting Lightolier's summary judgment motion.

### II. Standard of Review

 As indicated, the matter now before us was resolved in the Circuit Court on summary judgment. Whether summary judgment was granted properly is a question of law. The standard of review is *de novo* and we are concerned with "whether the trial court was legally correct." *Goodwich v. Sinai Hosp. of Baltimore, Inc.,* 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996); *see also Livesay v. Baltimore County,* 384 Md. 1, 9, 862 A.2d 33, 38 (2004); *Walk v. Hartford Casualty,* 382 Md. 1, 14, 852 A.2d 98, 105 (2004); *Murphy v. Merzbacher,* 346 Md. 525, 530–31, 697 A.2d 861, 864 (1997).

 The trial court, in accordance with Maryland Rule 2–501(e), shall grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as

---

7. In its opinion, the Court of Special Appeals refers to Gede as having installed the non-IC rated light fixture at issue. This is not the case, as it was Gede who installed the thermal insulation *after* Westwind installed the light fixtures.

to any material fact and that [the moving party] is entitled to judgment as a matter of law." The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact which is sufficiently material to be tried. *See Goodwich,* 343 Md. at 205–06, 680 A.2d at 1077; *Coffey v. Derby Steel Co.,* 291 Md. 241, 247, 434 A.2d 564, 567–68 (1981); *Berkey v. Delia,* 287 Md. 302, 304, 413 A.2d 170, 171 (1980). Thus, once the moving party has provided the court with sufficient grounds for summary judgment, the non-moving party must produce sufficient evidence to the trial court that a genuine dispute to a material fact exists. *See, e.g., Hoffman Chevrolet, Inc. v. Washington County Nat'l Sav. Bank,* 297 Md. 691, 712, 467 A.2d 758, 769 (1983). This requires "produc[ing] facts under oath, based on the personal knowledge of the affiant to defeat the motion. Bald, unsupported statements or conclusions of law are insufficient." *Id.* (alteration added). With these considerations in mind, we turn to the case *sub judice.*

## III. Discussion

Lightolier's primary contention on this appeal is that the doctrine of misuse applies under the facts as heretofore described and that such misuse of the non-IC rated fixture bars any recovery the Hoons claim against Lightolier. Whether Lightolier is correct as to this issue requires this Court to examine the doctrine of misuse and its application, if at all, to the circumstances surrounding the destructive fire of November 2, 1998.

This Court thoroughly discussed the doctrine of misuse and its possible barring effect on strict liability in tort claims twenty years ago in *Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 495 A.2d 348 (1985). That case concerned a product liability suit brought by a woman against a fabric manufacturer and the seller of a nightgown which ignited and caused injury to her. At the time of her injury, the woman was wearing the nightgown inside out, draping the exposed pockets across the burners of a stove. In deciding whether the trial court was correct in instructing the jury on product

misuse as a possible defense to the strict liability claim, we initially recognized our adherence to the view of § 402A of the Restatement (Second) of Torts, which provides:

"402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

RESTATEMENT (SECOND) OF TORTS § 402A (1965). Thereafter, we stated in *Ellsworth* that:

" 'Under § 402A, various defenses are [] available to the seller in an action based on strict liability in tort. These defenses are set forth and explained in the official comments following § 402A. For example, *the seller is not liable where injury results from abnormal handling or use of the product* (Comment h), where mishandling or alteration after delivery of the product renders it unsafe (Comment g), *or if warnings or instructions supplied with the product are disregarded by the consumer where, if used in accordance with these warnings, the product would be safe* (Comment j).' "

*Ellsworth,* 303 Md. at 591–92, 495 A.2d at 353 (emphasis added) (quoting *Phipps v. General Motors Corp.,* 278 Md. 337, 346, 363 A.2d 955, 959–60)). We then made it clear that, in

product liability actions, misuse of a product, if proven, negates a design defect claim and occurs when the product in question is used in a manner not reasonably foreseeable to the manufacturer and/or seller. *Ellsworth,* 303 Md. at 595–96, 495 A.2d at 355. As the Court of Special Appeals correctly noted in *Simpson v. Standard Container Co.,* 72 Md.App. 199, 527 A.2d 1337, *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987), however, this reasonable foreseeability test must be applied with caution "because, with the benefit of hindsight, any accident could be foreseeable. Without care, the imposition of strict products liability could result in a manufacturer's becoming an insurer for every injury that may result from its product." *Id.* at 206, 527 A.2d at 1341.

In *Halliday v. Sturm, Ruger & Co., Inc.,* 138 Md.App. 136, 770 A.2d 1072 (2001), *aff'd,* 368 Md. 186, 792 A.2d 1145 (2002), a three-year-old child was killed when he discovered a handgun under his parents' mattress, loaded an ammunition magazine into the gun and, while playing with the gun, accidentally fired it, suffering a fatal bullet wound to his head. The instruction manual for the handgun included warnings that " 'Firearms should always be stored securely and unloaded, away from children and careless adults' and 'Firearms should be securely locked in racks or cabinets when not in use.' " *Id.* at 173, 770 A.2d at 1094.

The mother of the child thereafter sued the gun manufacturer for strict product liability based on defective design of the handgun. The Circuit Court for Baltimore City granted summary judgment in favor of the handgun manufacturer. On appeal to the intermediate appellate court, one issue to be addressed was whether the placement of the handgun under the mattress was a misuse of the handgun. In holding that this did in fact constitute misuse of the handgun, the Court of Special Appeals, applying the holdings in *Ellsworth* and *Simpson,* stated that "had [the warnings] been followed, the tragic accident in this case would not have occurred. . . . Instead, however, [the father] stored the handgun under his mattress, evidently within reach of his son. There can be no debate that this was an affirmative action on [the father's]

part that *clearly contravened the warnings contained in the instruction manual.* [The father's] improper storage of the handgun was misuse, thus defeating appellant's defective design claim." *Id.* at 174, 770 A.2d at 1094 (alterations added) (emphasis added).

Insofar as Lightolier contends that the use of one of its non-IC rated fixtures in an area where thermal insulation came within three inches of the fixture, thereby entrapping substantial heat and causing the fire, was a misuse of the non-IC rated fixture, we agree. Even under a reasonable foreseeability standard, while it was not a misuse for the Hoons to have the non-IC rated fixtures installed in their home for lighting purposes, it was a misuse of the product for the Hoons to contract for the installation of blown-in cellulose insulation without taking adequate steps to ensure that the insulation installers heeded the warnings relating to the fixtures. There is little doubt that, because the thermal insulation was installed after the non-IC rated fixtures were installed, Gede was negligent in placing thermal insulation dangerously close to the fixtures. It was *reasonably foreseeable* that someone might place thermal insulation too close to a non-IC rated fixture, thereby creating an increased risk of fire. It was for this reason that Lightolier addressed that foreseeability by providing adequate notice of the danger, notice that the Hoons and/or their agents failed to heed by adequately supervising the installation of the insulation. Warnings on products, by their very nature, are generally meant to counteract reasonably foreseeable situations that may pose a danger to the consumer or others. As was the case in *Halliday,* the warnings in the case *sub judice* were adequate and yet went unheeded. Thus, this is a case of misuse of the non-IC rated fixture by the Hoons.

Additionally, Lightolier asserts that, even in a non-misuse context, the existence of clear warnings on a product that poses a danger may also serve to bar strict liability actions if certain circumstances exist. We agree.

"Failure to read or follow instructions or warnings also involves conduct that may be considered negligent. . . . If a product otherwise unreasonably dangerous can be made safe for reasonably foreseeable uses by adequate warnings or instructions, liability will be avoided, and the focus in such cases is generally upon the adequacy of the notice. *If the warnings or instructions are adequate the product is not defective, and the plaintiff cannot recover under a theory of strict liability in tort. The cause of the injury in such cases is the failure to read or follow the adequate warnings or instructions, and not a defective product."*

*Ellsworth,* 303 Md. at 598 n. 12, 495 A.2d at 356 n. 12 (emphasis added). *See also Hood v. Ryobi America Corporation,* 181 F.3d 608, 611 (4th Cir.1999) (stating that "Maryland imposes no duty to predict that a consumer will violate clear, easily understandable safety warnings . . .").

Comment j to § 402A of the Restatement (Second) of Torts also emphasizes the importance of considering warnings in product liability cases. The comment states:

"Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, *which is safe for use if it is followed,* is not in defective condition, nor is it unreasonably dangerous."

RESTATEMENT (SECOND) OF TORTS § 402A, comment j (emphasis added).

It follows that misuse of a product and failure to read or follow a product's warnings and instructions exist as two distinct, though at times intertwined (as in the present case), defenses to strict product liability. In *Simpson v. Standard Container Co., supra,* the Court of Special Appeals had before it a case in which a gasoline container was improperly stored by a homeowner, Mr. Ramesh Oza, in the basement of his home. The gasoline container had warnings on it to "Keep Out of Reach of Children" and "Do Not Store in Vehicle or Living Space." Mr. Oza's four-year-old son was killed and a visiting child was severely burned when the two children

removed the cap from the gasoline can, spilling gasoline over the basement floor where it subsequently ignited.

One issue before the intermediate appellate court was whether, notwithstanding the warnings printed on the gasoline container, a cause of action for strict product liability could proceed against the manufacturer of the container. The court first considered whether the placement of the gasoline container in a basement was to be deemed a misuse of the container. After explaining and applying our decision in *Ellsworth* to the facts before it, the Court of Special Appeals stated:

> "In this case, the Ozas stored the gasoline can in the basement of their home, ignoring the admonitions on the sides of the can not to store it in living areas. The Ozas stored the can in an area which allowed two unsupervised four-year-olds access to the can. *The gasoline can was not being used for the purpose and in a manner that was reasonably foreseeable.* As a matter of law, there was a misuse of this product and misuse negates the element of defect."

*Simpson,* 72 Md.App. at 206, 527 A.2d at 1341 (emphasis added).

Although the court at that stage found that misuse in and of itself served to bar the plaintiff's strict product liability claim, the intermediate appellate court continued, as we do here, stating:

> "*Misuse is not the only ground upon which our decision rests.* Comment j to Restatement (Second) of Torts § 402A, states:
>
>> 'Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.'
>
> The gasoline can had warnings written on two of the four sides proclaiming 'Keep Out of Reach of Children' and 'Do

Not Store in Vehicle or Living Space.' *The* [manufacturer] *provided adequate warnings which went unheeded. The product was not in a defective condition nor was it unreasonably dangerous.* The appellants failed to state a cause of action for strict products liability under Maryland Law."

*Id.* at 206–07, 527 A.2d at 1341 (alteration added) (emphasis added). We agree with the Court of Special Appeals' determination in *Simpson,* which stemmed from our decision in *Ellsworth,* that the failure of one to heed warnings concerning a product is a defense to a strict products liability claim that can at times be considered independent from that of misuse.

Of course, warnings on products that are vague or otherwise difficult to understand shall not generally have the effect of barring a product liability claim when those warnings go unheeded. For example, if the non-IC rated fixtures at issue here merely had a warning label affixed to them stating "Warning—Risk of Fire" and nothing more, it might constitute such a generalized warning that in essence it might not warn at all. *See, e.g., Klein v. Sears, Roebuck and Co.,* 92 Md.App. 477, 490, 608 A.2d 1276, 1282–83, *cert. denied,* 328 Md. 447, 614 A.2d 973 (1992) (Court of Special Appeals stating that radial power saw warnings and instructions were "far too general ... in this case ... because reasonable minds may differ as to whether the existence of such warnings, if heeded, would make the saw safe for its intended use"). In the case *sub judice,* however, Lightolier made unquestionably clear and adequate warnings on its non-IC rated fixtures concerning the risk of fire they posed *if placed within three inches of thermal insulation.* As noted, *supra,* these warnings were conspicuously located both directly on the light fixtures and also in the instruction manuals that accompanied each Lightolier non-IC rated fixture. Moreover, the warnings were substantially in accordance with those required by the UL Marking Guide and § 410–66(b) of the NEC. As we stated in *Moran v. Faberge, Inc.,* 273 Md. 538, 332 A.2d 11 (1975), when considering the adequateness of warnings, "it is proper for the trier of fact to

consider both the prior history of the product [8] ... *and the extent of the manufacturer's adherence to industry-wide standards and practices."* *Id.* at 552–53 n. 10, 332 A.2d at 20 n. 10 (citations omitted) (emphasis added) (footnote added). Thus, we agree with the Circuit Court and find no reason to hold that Lightolier's warnings, which were clearly stated on both the light fixtures and the instruction manuals accompanying those fixtures, were inadequate to warn of the specific danger inherent in placing thermal insulation within three inches of a non-IC rated fixture.

■ Notwithstanding the warnings on the non-IC rated fixtures, the Hoons contend that Lightolier's use of a SHTP on its non-IC rated fixtures should have prevented the fire because it was designed to cycle the light when the temperature around the fixture became excessive and stated in their complaint that "Lightolier ... placed the lighting fixtures into the stream of commerce ... in a defective and unreasonably dangerous condition in that the design of the lighting fixtures was such [that] the thermal protection component which was designed to safeguard the lighting fixture from overheating was improperly located" (alteration added). This improper location argument is in effect an allegation of defective design. Thus, the Hoons claim that the failure of the SHTP to cycle when surrounded by thermal insulation was a proximate cause of the fire of which Lightolier should be held liable.

Section 410–65 of the NEC provides the following guidelines in regard to temperature and light fixtures:

"**410–65. Temperature.**

**(a) Combustible Material.** Fixtures shall be so installed that adjacent combustible material will not be subjected to temperatures in excess of 90C (194F).

**(b) Fire–Resistant Construction.** Where a fixture is recessed in fire-resistant material in a building of fire-resistant construction, a temperature higher than 90C

8. The record does not indicate a history of Lightolier Model 1002P1 fixtures and related fires, if any.

(194F), but not higher than 150C (302F), shall be considered acceptable if the fixture is plainly marked that it is listed for that service.

(c) **Recessed Incandescent Fixtures.** *Incandescent fixtures shall have thermal protection and shall so be identified as thermally protected.*

Because many recessed incandescent fixtures are suitable for a wide variety of lamp sizes and types and finish trims, the temperature close to the lamp can vary widely. *Therefore, many manufacturers have chosen to locate thermal protectors away from the source of heat, such as in the outlet box, and to design the protector so that it will detect a change in temperature resulting from the addition of thermal insulation around the fixture.* This prevents nuisance tripping of the protector (as a result of changing lamp wattage, for example) but still provides protection against overheating arising from thermal insulation around a recessed fixture not designed for such use." [Emphasis added.]

Thus, under the NEC guidelines, manufacturers of recessed non-IC rated fixtures are required to design those fixtures to include thermal protection devices such as the SHTP involved in this case, recognizing at the same time that SHTPs are to be located away from the fixtures themselves. The record is completely devoid of any evidence that the placement of the SHTPs by Lightolier on its non-IC rated fixtures was in violation of § 410–65 of the NEC. Whereas one of the Hoons' expert witnesses, Dr. Thomas W. Eager, stated that "the design of the light fixture was a contributory cause [of the fire because] [t]he thermal sensor on the Lightolier fixture is well separated from the hottest portion of the fixture, namely, the lamp holder," § 410–65 clearly states that "[b]ecause many recessed incandescent fixtures are suitable for a wide variety of lamp sizes and types and finish trims, the temperature close to the lamp can vary widely. Therefore, many manufacturers have chosen to locate thermal protectors *away from the source of heat* ..." (emphasis added). As this practice has been accepted by the NEC, we find no reason now to hold that

Lightolier's placement of the SHTP constitutes a defective design creating an unreasonable risk of fire. In respect to design issues, the Hoons concede that the SHTPs affixed to two other fixtures operated properly.

 Although the Hoons correctly point out that there can be more than one proximate cause of an injury, we do not find that such is the case here. It is undisputed that the Hoons, or an entity partially owned by them and acting on their behalf, permitted Gede to, and that Gede did, place thermal insulation too close to the non-IC rated fixtures in violation of the warnings on the fixtures themselves and § 410–66(b) of the NEC ("Thermal insulation shall not be installed within 3 in. (76 mm) of the recessed fixture enclosure"). There is no question that this occurrence was a proximate cause of the fire. That is, but for Gede placing the thermal insulation in contact with the non-IC rated fixture the fire would not have occurred regardless of the placement of the SHTP. Even with the SHTP there still existed a very probable risk of fire if insulation came into contact with a non-IC rated fixture and the conspicuous warnings on the Lightolier fixtures made this risk evident.[9] There is an absence of any evidence that the fire would have occurred without the thermal insulation being placed within three inches of the non-IC rated fixture. Therefore, we hold that the sole proximate cause of the fire was the improper placement of thermal insulation in direct contact with an electrical light fixture which displayed clear warnings

---

9. The record indicates, and the Hoons admit as much in their answers to Lightolier's interrogatories, that Gede's placement of blown-in cellulose insulation in direct contact with the non-IC rated fixture in effect created a barrier between the actual socket housing (from which the heat emanated) and the SHTP, thereby handicapping the SHTP's ability to detect a dangerous rise in temperature near the socket housing. As understood from the NEC guidelines, however, the placement of a thermal sensor away from the source of heat is a common practice among light fixture manufacturers and in certain ways makes the thermal protector more effective than if placed closer to the source of the heat. When Gede improperly placed insulation *between* the socket housing and the SHTP, however, the ability of the SHTP to detect rising heat conditions was drastically reduced.

that thermal insulation was not to be placed within three inches of the fixture because of a risk of fire.

## IV. Conclusion

We find no sufficient reason for the reversal of the Circuit Court's granting of Lightolier's summary judgment motion. Although the Circuit Court stated that its decision was based on its concept of misuse, another reason given by the Circuit Court was also that "Gede Insulation, LLC acted contrary to warnings on the fixture, to warnings in the instruction booklet accompanying the fixture, and to common knowledge in the insulation and construction industry. According to [the Hoons], had Gede adhered to the warnings on the product, their damages would not have resulted" (alteration added). Thus, in essence, notwithstanding the use of the term misuse, which in any event was accurate, the Circuit Court also based its holding on the failure of the Hoons' thermal insulation installer to heed the warnings concerning the non-IC rated fixture. As we too find that this failure to heed the adequate warnings on the Lightolier fixtures was a proximate cause of the fire at the Hoons' home, the Hoons' claim against Lightolier for strict liability was properly denied by the Circuit Court's granting of Lightolier's motion for summary judgment.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR KENT COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.**

BELL, C.J., WILNER and BATTAGLIA, JJ., dissent.

Dissenting Opinion by WILNER, J., which BELL, C.J., and BATTAGLIA, J., join.

With respect, I dissent from the Court's holding that summary judgment in favor of Lightolier was appropriate in this case. Had a jury found in favor of Lightolier, I would have no

difficulty whatever in sustaining that verdict. In my view, however, there were issues presented that were properly for the jury to resolve and that, on this record, should not have been resolved through the entry of summary judgment.

Although Lightolier suggested in its brief and at oral argument that the recessed lighting fixture in question was not appropriate for use in an insulated ceiling, that suggestion finds no support in the record. Indeed, the record actually shows, at least by inference, the contrary. In conformance with a provision of the National Electric Code, there was a warning that thermal insulation should not be installed within three inches of the fixture sides or wiring compartment or above the fixture in such manner as to entrap heat. To me, that rather clearly indicates that the fixture *was* usable in an insulated ceiling, so long as the insulation was kept at least three inches away from the sides and some distance from the top. It appears that the fixture was installed by a contractor prior to the installation of any insulation, so there would have been no misuse of the product at the time of its installation. Because the fixture was in place when the insulation contractor did its work, it may be that the insulation contractor was negligent in failing to heed the warning printed on the fixture. Whether that negligence on the part of the insulation contractor would translate into a "misuse" of the fixture by *Hoon* is not so clear, at least on this record.

The major problem that I have with the Court's conclusion is its downplaying of the apparent failure of the SHTP device, not just to warn the Hoons of a problem by causing the light to blink but, more important, to interrupt the power supply if and when the lamp overheated. Had the SHTP device worked as it was intended to work, as it should have worked, and as it was required to work by the National Electric Code, the fire may not have occurred. There was conflicting evidence regarding the adequacy of the design of the SHTP, and it seems clear to me that, whether that device was deficient and, if deficient, whether that deficiency was at least one proximate cause of the fire were issues for the jury to

determine. I believe that the Court of Special Appeals got it right and that its judgment should be affirmed.

Chief Judge BELL and Judge BATTAGLIA have authorized me to state that they join in this dissenting opinion.